# LOAN AGREEMENT

This Loan Agreement (the "Agreement") dated 5/27/99 is entered into between the Borrower and the Lender. All capitalized terms not defined in the body of this Agreement are defined in the attached Terms Rider, which shall be considered to be an integral part of this Agreement. The Agreement is entered into by Lender and Borrower on the date it is executed by each.

## RECITALS

Borrower represents to Lender that Borrower is entitled to receive the Cash Collateral described in the Terms Rider.

At Borrower's request, Lender has agreed to make a loan (the "Loan") to Borrower in an amount equal to the Loan Amount and to be evidenced by a Secured Promissory Note (as defined below). The Loan is to be repaid by the Loan Payments as set forth in the Terms Rider. Borrower's obligation to repay Lender is to be secured by the Security Agreement (as defined below) given by Borrower to Lender and in Lender's favor according to the Uniform Commercial Code pledging the Collateral and perfecting the security interest in the Collateral by execution and delivery of a UCC-1 financing statement, all as more particularly described below.

Subject to the terms and conditions hereof, the Loan Amount shall be payable to the Borrower within 15 Business Days of the execution and delivery of this Agreement and the Related Documents to Lender and the satisfaction of the Conditions Precedent (the "Closing"). If prior to the Closing, Borrower receives any of the Periodic Payments (or any portion thereof), the Loan Amount shall be reduced by the amount so received by Borrower.

**NOW, THEREFORE,** for good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1.     **Loan.** Subject to the terms hereof and subject to the satisfaction of the Conditions Precedent, Lender agrees to lend to Borrower the Loan Amount to be repaid by Lender by the Loan Payments described in the Terms Rider. Borrower's obligation to pay the Loan is to be evidenced by the Secured Promissory Note and secured by Borrower's pledge and collateral assignment of the Collateral.

2.     **Pledge of Collateral.** Concurrently with the execution and delivery of this Agreement, Borrower pledged and collaterally assigned to Lender a security interest in Borrower's right, title and interest in and to the Collateral. So long as Borrower's liability to Lender is outstanding as a result of this Agreement or any future agreement between Lender and Borrower, Borrower will not, without Lender's prior written consent, grant a security interest to any other person, or permit liens or encumbrances to attach to the Collateral and hereby represents to Lender that the Collateral is now and will remain free and clear of any and all other encumbrances.

3.     **Irrevocable Instructions; Acknowledgments; Other Documents.**

Prior to or simultaneously with the execution and delivery of this Agreement;

    a.     Borrower shall deliver to Lender a letter of instructions in the form attached as Exhibit "A" (or otherwise in form and substance satisfactory to Lender) directing that all payments to be made in relation to any of the Collateral be sent to the Servicing Account (the "Notice of Direction of Payment"). Borrower shall also, simultaneously with or subsequent to the execution and delivery of this Agreement, deliver to Lender, addressed as Lender may require, such other notices, instructions or communications, and copies of the foregoing, as Lender may deem necessary or proper to effectuate the intent and purposes of this Agreement.

    b.     Borrower shall deliver to Lender a special irrevocable power of attorney in the form of Exhibit "E" attached hereto (or otherwise in form and substance acceptable to Lender) appointing Lender, Lender's Assignee, or their successors or assigns as its attorney-in-fact to make further changes to the payment instructions as it so elects.

c.    Borrower shall execute and deliver to Lender UCC-1 financing statements in the form of Exhibit "D" attached hereto (or otherwise in form and substance satisfactory to Lender) and hereby authorizes Lender to file such financing statements in such jurisdictions as Lender reasonably believes are appropriate or necessary to perfect Lender's and/or Lender's Assignee's security interest in the Collateral.

d.    Borrower shall execute and deliver to Lender a Secured Promissory Note in the form of Exhibit "B" attached hereto (or otherwise in form and substance satisfactory to Lender) (the "Secured Promissory Note").

e.    Borrower shall execute and deliver to Lender a Security Agreement in the form of Exhibit "C" attached hereto (or otherwise in form and substance satisfactory to Lender) (the "Security Agreement") and hereby authorizes Lender to file such document in such jurisdictions as Lender reasonably believes are appropriate or necessary to perfect Lender and/or Lender's Assignee's security interest in the Collateral.

f.    Borrower agrees that, from time to time, at its expense, it will promptly execute and deliver all further instruments, documents, agreements and acknowledgments, and take such further action, that may be necessary or appropriate, or that Lender, Lender's Assignee or their successors or assigns may request, in order to perfect, protect or more fully evidence the transfer and assignment of the right to receive the Collateral or to enable the Lender, Lender's Assignee or their successors or assigns to exercise or enforce any of their rights hereunder or thereunder (including but not limited to Lender's or Lender's Assignee's or their successors or assigns right to assign this Agreement or the benefits hereof).

g.    Borrower shall deliver to Lender a Statement of Legal Representation in the form attached hereto as Exhibit "G" (or otherwise in form and substance satisfactory to Lender) attesting that Borrower has had legal representation regarding this transaction and the terms of this Agreement or that Borrower has waived such representation.

h.    Borrower shall deliver to Lender a Loan Questionnaire (the "Questionnaire") in the form attached hereto as Exhibit "H".

i.    Borrower shall deliver to Lender, for purposes of the Internal Revenue Service, a W-9 form as attached hereto as Exhibit "I".

j.    Borrower shall deliver to Lender an Authorization for Deductions, Authorization to conduct Credit and Criminal Background Searches and Authorization to Release Information in the form attached hereto as Exhibit "J".

4.    **Representations and Warranties of Borrower.** Borrower represents and warrants, except as set forth in the Terms Rider and Questionnaire, as follows:

a.    Borrower has full power and authority to enter into this Agreement and pledge and collaterally assign the Collateral to Lender and does not require the consent of any third party, including any present or former spouse, to do so.

b.    Borrower's residence and domicile is as set forth in the Terms Rider and Questionnaire. During the last five years, Borrower has lived at such address or at such other addresses as have been set forth in the Terms Rider and Questionnaire. Borrower's social security and drivers license numbers are as set forth in the Terms Rider and Questionnaire.

c.    Borrower has the absolute, unfettered right to the Collateral and Borrower owns (and is collaterally assigning to Lender hereunder) all right, title and interest in and to the Collateral free and clear of all liens, charges, security interests, encumbrances, and agreements of any nature whatsoever (other than as created by this Agreement and the Related Documents), and no party other than Lender shall have any present or future right therein or thereto.

d.    This Agreement and the Related Documents have been duly executed and delivered by Borrower, and represent the legal, valid and binding obligation of Borrower, enforceable in accordance with their respective

2

terms. Each Spousal Consent has been duly executed by the current spouse of Borrower and, if different, the Borrower's prior spouse(s), and represents the legal, valid and binding obligation of each such spouse, enforceable in accordance with its terms.

e.    The execution, delivery and performance of this Agreement and the Related Documents by Borrower, and each Spousal Consent and the transactions contemplated herein and therein, (1) do not conflict with any obligations of Borrower, or any such spouse, whether by contract, judgment or otherwise; (2) shall not cause a breach of or default under any contract or agreement by which Borrower or its assets or any of their assets are or may be bound; (3) will not result in the creation of, or give any party (other than Lender) the right to create any lien, charge, security interest or encumbrance in, to or on any of the Collateral; and (4) will not give rise to a right (present or future) of any other party to assert any claim against Borrower or its assets, or any of the Collateral.

f.    **Borrower is competent to enter into this Agreement and the Related Documents and understands the terms and provisions of this Agreement and the Related Documents and has received independent tax and accounting advice and legal representation (or has waived such legal representation) in the negotiation and execution of this Agreement and the Related Documents. Seller also acknowledges that Purchaser did not provide Seller with tax advice.** Each spouse executing a Spousal Consent is competent to execute such documents and understands the terms and provisions thereof. As of the date of this Agreement and each of the Related Documents, Borrower is over eighteen (18) years of age, mentally sane, and of a sound mind. Borrower has never been convicted of a felony. Borrower is intimately familiar with the current status of Borrower's financial affairs and condition. After due consideration of that condition and other relevant factors, Borrower hereby irrevocably certifies that; (1) Borrower is not presently engaged in or contemplating the commission of any act that could hinder, delay or defraud any creditor of the Borrower; and (2) the execution and delivery of this Agreement and the Related Documents and the other documents by Borrower and the consummation of the transactions contemplated hereby have not been intentionally concealed from, and will not hinder, delay or defraud any creditor of Borrower. The Borrower does not have any disability or other incapacity that would prevent the Borrower from being gainfully employed.

g.    Except for consents obtained and notices delivered prior to or simultaneously with the execution and delivery of this Agreement and the Related Documents, and other than the permitted filing by Lender of the UCC-1 financing statements referenced in this Agreement and the Related Documents, no consent of or other action by any party, and no notice of filing with, any other party is required for the due execution, delivery and performance by Borrower of this Agreement and the Related Documents and any transactions contemplated herein or therein, or for the perfection or exercise by Lender, Lender's Assignee, or their successors or assigns of any of their rights and remedies hereunder. No party has asserted, and no circumstances warrant the assertion by any party of, any rights in or to the right to receive the Collateral, other than the rights of Borrower therein, all of which are collaterally assigned to Lender, Lender's Assignee and their successors or assigns hereunder.

h.    The Borrower has taken all actions contemplated to be taken by it prior to or simultaneously with the execution and delivery of this Agreement and the Related Documents. Borrower acknowledges and agrees that Lender has not waived the taking of any such actions. All such actions taken are in full force and effect, as reflected in the various correspondence provided to Lender prior to or on the date hereof.

i.    The representations and warranties of Borrower or any other statement of fact by Borrower in this Agreement and/or the Related Documents (including the Recitals) and all questionnaires and other information provided by Borrower to Lender are true, complete and accurate and they do not contain any untrue statement of fact, or fail to state information necessary to make any statement made herein or therein not misleading.

j.    Borrower has not sold, pledged, assigned or encumbered its rights to receive the Collateral or any part thereof other than to Lender. The right to receive the Collateral is not subject to any mortgage, pledge, lien, charge, security interest, encumbrance, restriction or adverse claim of any nature whatsoever.

k.    Borrower is not in default of any obligations concerning child-care, alimony or support.

l.    If Borrower is married or was married at the time Borrower became entitled to the Cash Collateral as set forth in the recitals, Borrower has discussed this transaction with his/her present and/or prior spouse. Such spouse

or prior spouse consents to this transaction and waives any marital property right he or she may have in the Collateral, this Agreement and/or the Related Documents.

      m.     The execution and delivery of this Agreement, the Related Documents and the consummation by Borrower of the transactions contemplated hereby and thereby will not result in the breach of any terms or conditions of or constitute a default or be void under any mortgage, note, instrument, agreement, or other oral or written obligation to which the Borrower is a party or by which the Borrower is bound or affected or violate any other order, writ, injunction, or decree of any court, administrative tribunal, or agency having jurisdiction over Borrower in any litigation to which Borrower is or was a party or otherwise violate any law.

      n.     Borrower hereby WAIVES AND RELEASES all rights of Borrower in, to, or under, any restrictions on assignability, or in the ability to pledge the Collateral, if any.

      o.     There are no attachments, executions, assignments for the benefit of creditors, or voluntary or involuntary proceedings in bankruptcy or under any other debtor relief laws contemplated by Borrower or pending or threatened against Borrower or the Collateral.

      p.     No broker, finder or other person was involved or instrumental in arranging the transaction described herein, and no other person is entitled to a fee, payment, commission or other compensation in connection with such transaction except for the Broker Fee as provided for the in the Terms Rider.

      q.     All changes of payee address as required hereunder will be duly honored by the payors of all Cash Collateral. Acknowledgment issued by the payors of the Cash Collateral will be provided to Lender within thirty (30) days of the date hereof. Any breach of this representation and warranty shall constitute a material breach of this Agreement.

      r.     Borrower has paid all federal, state and local taxes or has made adequate provisions for the payment of same.

      s.     Borrower is not a party to any pending litigation and no litigation is  threatened which will or is likely to involve Borrower.

      t.     Borrower is using the proceeds of the Loan for a valid and lawful business purpose.

**5.**     **Covenants of Borrower.**    Borrower hereby covenants to Lender as follows:

      a.     Borrower shall not, and shall not permit any other party (except Lender or its assignee, if applicable), to withdraw funds from or set-off claims against the Collateral or otherwise change or take any other action to affect the Collateral, and shall not otherwise claim ownership of such Collateral or the rights thereunder or funds therein, but shall rather inform any person who may inquire thereabout of Lender's interests and rights therein and ownership thereof. Borrower shall disclaim any interest in and right to the Collateral, and any rights to amend, modify, rescind, alter, assign, sell or encumber any rights in, to or under the Collateral. Borrower shall not take nor shall it permit to be taken any action (nor shall Borrower fail to take or permit there to be a failure to take any action) which may result in diminution or impairment of Lender's rights and interests under this Agreement and the Related Documents.

      b.     Borrower shall not do or fail to do any act which may constitute a breach of or default under (immediately or with the passage of time or with or without notice) the Agreement and/or the Related Documents.

      c.     Borrower shall provide to Lender at least thirty (30) days prior written notice of Borrower's intention to move his residence or domicile from the address set forth in the Terms Rider and shall advise Lender of each such change of address.

      d.     Borrower shall ensure that Lender continues to receive all Cash Collateral payments directly from the payor thereof (as more particularly set forth in the Notice of Direction of Payments).

e.    Borrower acknowledges that applicable state law may contain provisions that restrict or purport to restrict the "assignability" or "pledgeability" of the Collateral.   Without in any way limiting the scope or application of any other provisions of this Agreement or the Related Documents (and in addition to all of the other representations, covenants and agreements of Borrower in the Agreement and the Related Documents), Borrower covenants and agrees to so order and conduct Borrower's affairs as to prevent the assertion of any claim that the Collateral was not assignable or pledgeable.

f.    Borrower accepts the continuing and irrevocable duty to cooperate with Lender in providing to Lender the practical benefits of the bargain obtained under this Agreement and the Related Documents, specifically including, without limitation, the duty to immediately deliver to Servicer (or such other person designated by Lender or Lender's Assignor) any checks, funds or other form of payment on account of or in connection with the Collateral hereafter received by Borrower or anyone (other than Lender) claiming by or through Borrower.  Borrower covenants and agrees to take all reasonable action necessary to provide to Lender the practical benefits of the bargain obtained under this Agreement and the Related Documents.

g.    If Borrower learns (before or after the consummation of this Agreement) of the threat or institution of any condemnation, garnishment, turnover, or other action, suit or proceeding against or affecting any part of the Collateral, or the other rights and benefits of the Lender under the terms of this Agreement and the Related Documents, or relating to or arising out of the ownership, receipt or utilization of the Collateral, then Borrower will immediately notify Lender of same and will give Lender copies of all notices and other writings relating to it promptly after their receipt by Borrower.

h.    If Borrower receives any notice relating to any alleged claim affecting the Collateral, then Borrower will promptly notify Lender of same and will promptly give Lender copies of all notices and other writings relating to it received by Borrower promptly after their receipt.

i.    Borrower agrees not to use the proceeds of the Loan, directly or indirectly, so as to involve Borrower in a violation of Regulation U or X of the Board of Governors of the Federal Reserve System, or for any other purpose not permitted by Section 7 of the Securities Exchange Act of 1934, as amended, or by any of the rules and regulations respecting the extension of credit promulgated thereunder.

j.    Borrower will not allow its credit rating as reported by one of the major credit reporting bureaus to materially deteriorate from its condition as of the date of this Agreement.

6.    **Conditions Precedent.**

The obligation of Lender to lend the Loan Amount shall be subject to the satisfaction (or waiver in writing by Lender) of the following Conditions Precedent:

a.    The representation and warranties of the Borrower shall be true, accurate and complete as of the date hereof and as of the Closing.

b.    The Borrower shall have delivered all instruments and documents required by it to be delivered under this Agreement and the Related Documents, executed by the parties thereto. The Borrower shall have otherwise complied with all of its covenants, commitments, undertakings and agreements contained in this Agreement and the Related Documents.

c.    The Notice of Direction of Payments shall have been complied with in all material respects by the payor of the Cash Collateral.

d.    There shall not be pending any action, proceeding or governmental action, and there shall not have occurred any change in law or regulation or interpretation of the same, which challenges or seeks to avoid or otherwise places in question the validity of the transactions contemplated by the Agreement and the Related Documents.

e.    No insolvency, reorganization or like proceedings shall have been commenced or threatened against, by or involving the Borrower or the payors of any and all Cash Collateral and there shall have not occurred any downgrading in the credit rating of any such payor of Cash Collateral.

f.    If Lender so elects to seek advice on the issue, Lender shall have received an opinion from counsel that the grant by Borrower to Lender of a security interest in the Collateral under this Agreement and the Related Documents is enforceable against Borrower in accordance with its terms.

g.    Borrower shall have provided independent verification, as reasonably requested by Lender, of any of the representations and warranties made by Borrower in the Agreement and/or the Related Documents, and of the faithful and full performance of the Borrower's undertakings, covenants and agreements set forth herein and therein. No facts, events or occurrences shall have come to the attention of Lender, by reason of any investigation which Lender may have undertaken or otherwise, which has led it to believe that any of the foregoing conditions may not have been satisfied.

h.    Borrower shall obtain life insurance in an amount sufficient to fully defease all of the Loan Payments to be paid to Lender hereunder. Such policy of insurance shall be assigned to Lender or Lender's Assignee and shall name Lender or Lender's Assignee as beneficiary and shall be issued by a life insurance company satisfactory to Lender.

## 7.    Indemnification by Borrower.

Borrower (on its own behalf and on behalf of its estate, successors, assigns, heirs, executors, administrators and representatives) hereby agrees to indemnify, defend and hold harmless Lender and any of its present or future agents, attorneys, employees, officers, partners, shareholders, directors, successors or assigns, or other associates and affiliates (the "Indemnified Parties"), from and against all claims, losses, liabilities, obligations, damages, penalties, actions, judgments, suits, causes of action and related costs and expenses of any nature (including attorney fees and expenses) which may be imposed upon, incurred by or asserted against any Indemnified Party in any way arising out of, related to or in connection with the negotiation, execution or performance by any Indemnified Party of this Agreement or any Related Document, including, without limitation, as a result of the impairment of any of the Collateral, excluding any such claims arising on account of such Indemnified Party's gross negligence or willful misconduct.

## 8.    Agreements of Lender.

a.    If Lender receives or otherwise comes into possession of any of the Collateral or portion(s) thereof which does not constitute Periodic Payments due to Lender hereunder, Lender shall forward such amount(s) to Borrower at the address listed in the Terms Rider within 7 days of receipt of such amount(s).

b.    Lender agrees that upon payment in full of the Obligations, whether upon timely receipt of all of the Loan Payments as set forth in the Terms Rider or otherwise, Lender's interest in the Collateral and powers and authorities granted pursuant to the Agreement and the Related Documents shall terminate and Lender shall provide notice to the payors of all Cash Collateral to make all further payments due to Borrower at the address listed for Borrower in the Terms Rider. At such time Lender shall take all other action reasonably required for Borrower to obtain the practical benefits of this transaction.

## 9.    Survival of Representations, Warranties and Covenants.    Regardless of any investigations and examinations that may have been conducted by Lender, all representations, warranties and covenants made by Borrower pursuant to this Agreement and the Related Documents shall survive the execution hereof and the consummation of the transactions contemplated hereby.

## 10.    Binding Agreement and the Related Documents.    This Agreement and the Related Documents shall be binding upon and inure to the benefit of the parties hereto and the Lender's Assignee, if any (whether or not Lender's

Assignee is specifically referred to in any applicable provision of this Agreement or the Related Documents), and their respective representatives, estates, heirs, executors, administrators, beneficiary(ies), successors or assigns. Without limiting the generality of the foregoing, each covenant, representation and warranty of the Borrower herein and in the Related Documents shall be deemed made by and shall be binding upon the Borrower's estate, heirs, executors, administrators, beneficiary(ies), and representatives upon Borrower's death. Nothing in this Agreement and/or the Related Documents, express or implied, is intended to confer upon any other person or entity, except Borrower and Lender and Lender's Assignee, if any, and their respective representatives, estates, heirs, executors, administrators, beneficiary(ies), successors or assigns any rights or remedies by reason of this Agreement and/or the Related Documents.

11.     **Notices.** All notices, demands and other communications required or permitted hereunder shall be made in writing and shall be deemed to have been given when delivered in person, by private courier or delivery service, transmitted by facsimile transmission, or three days after deposit in the United States mails, postage prepaid, addressed to the addresses set forth in the Agreement and the Terms Rider attached hereto. Any party may change its address for notices by providing written notice of the change to the other party pursuant to the provisions of this paragraph except that such notice shall become effective only upon actual receipt.

12.     **Controlling Law.** This Agreement and the Related Documents shall be governed, construed and enforced in accordance with the substantive laws of the State of Utah without regard to its choice of law rules.

13.     **Borrower Consents To Personal Jurisdiction in Utah, Venue in Summit County and Entry of Judgment in the Event of Default.** Borrower agrees that the last act necessary to complete this transaction and the performance of his/her obligations hereunder are occurring in the State of Utah and therefore he/she acknowledges doing business in the State of Utah. Borrower also acknowledges that all of its dealings with Lender were with Lender from Lender's Utah office located in Summit County, Utah. Moreover, Borrower agrees that Lender's principal place of business for the activities which are the subject of this Agreement is in Summit County, Utah. Accordingly, Borrower agrees that any and all disputes arising from or concerning this Agreement, including any disputes regarding Borrower's representations, covenants and warranties, shall be determined in accordance with the laws of the State of Utah. In addition, Borrower consents to the personal jurisdiction of the Utah courts and agrees that venue for any proceeding regarding any of the foregoing will be in the state courts located in Summit County, Utah or federal courts located in Salt Lake County, Utah. Borrower therefore understands that he/she will be required to travel to Utah to defend himself/herself in the event of any such suit and also waives any claim that Summit County, Utah or Salt Lake County, Utah is an inconvenient forum.

     **BORROWER HEREBY WAIVES ANY AND ALL RIGHTS TO A JURY TRIAL.**

14.     **No Waivers.** No failure to exercise, delay in exercising, or single or partial exercise of any right, power or remedy by any party, and no course of dealing between or among any of the parties, shall constitute a waiver of, or shall preclude any other, or further exercise of, any right, power or remedy.

15.     **Headings.** The Section and subsection headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

16.     **Gender.** Where the context or construction requires, all words applied in the plural shall be deemed to have been used in the singular, and vice versa; the masculine shall include the feminine and neuter, and vice versa; and the present tense shall include the past and future tense, and vice versa.

17.     **Counterparts.** This Agreement may be executed in one or more counterparts, all of which taken together shall constitute a single Agreement.

18.     **Assignment.** The obligations and rights of Borrower under this Agreement shall not be assigned or otherwise transferred without the prior written consent of Lender. Any assignment without the written consent of the Lender shall be void and of no effect. The obligations and rights of Lender may be further assigned or transferred by Lender, provided that any transferee specifically agrees to be bound by the terms and conditions hereof. Borrower hereby acknowledges that Borrower has been informed, prior to entering into this Agreement, that the granting and funding of the Loan Amount may be simultaneous with a resale thereof to a third party investor who will rely upon the truth and

accuracy of Borrower's representations and warranties given herein and as otherwise given in connection with this Agreement.

**19.    Discharge of Adverse Claims.**  Lender shall be entitled to discharge any adverse claims against Borrower or any of the Collateral whether or not such adverse claims are disclosed.  Lender may, provided Lender furnishes prior written notice to Borrower, pay any and all amounts necessary, or if the Loan Amount has been deposited into an escrow account, instruct the escrow agent to pay any and all amounts necessary to discharge such liens or other adverse claims, and the Loan Amount shall be reduced by the amount of any such payment.

**20.    Prepaid Interest.**  Concurrently with the making of the Loan by Lender to Borrower, Borrower shall pay Lender prepaid interest on the Loan in an amount equal to five percent (5%) of the Loan Amount.  Such prepaid interest may be paid from the proceeds of the Loan.  Such prepaid interest shall be applied to the final payments of interest on the Loan.  If the Loan is prepaid in full or in part, such prepaid interest shall not be refunded to Borrower.

**21.    Prepayments.**  Borrower may prepay the Loan in whole or in part without premium or penalty, except as set forth in Section 20 above.

**22.    Remedies.**  Upon the occurrence of an Event of Default described in clause (b) of the definition of Event of Default in the Secured Promissory Note, all principal, all accrued and unpaid interest and all other obligations of Borrower under this Loan Agreement and the Secured Promissory Note (collectively, the 'Obligations') shall be and become due and payable, without demand upon or presentment to Borrower, which are expressly waived by Borrower, and Lender may immediately exercise all rights, powers and remedies available to it at law, in equity or otherwise, including under this Agreement.  Upon the occurrence and during the continuance of any other Event of Default (as defined in the Secured Promissory Note), at the option of Lender, the Obligations shall be and become due and payable, without demand upon or presentment to Borrower, which are expressly waived by Borrower, and Lender may immediately obtain and apply all Collateral to the Obligations and exercise all rights, powers and remedies available to it at law, in equity or otherwise, including under this Agreement.  The rights, powers and remedies of Lender hereunder are cumulative and in addition to all rights, powers and remedies given to Lender by virtue of any statute or rule of law, this Agreement, any other document executed in connection with this Agreement, or any other agreement, all of which rights, powers and remedies shall be cumulative and may be exercised successively or concurrently without impairing Lender's security interest in the Collateral.  As required by law, Borrower is hereby notified that a negative credit report reflecting on Borrower's credit record may be submitted to a credit reporting agency if Borrower fails to fulfill the terms of Borrower's credit obligations.

Borrower further agrees that in the event Borrower breaches any provision of this Agreement, Lender shall be entitled to recover, in addition to any and all other amounts or remedies permitted hereunder or otherwise permitted at law or equity, reasonable collection costs, including attorneys fees and litigation expenses and that any such judgment may also direct the payors of the Collateral to pay over the amount of the money judgment directly to the Lender.

**23.    Miscellaneous.**  Borrower shall be solely responsible for the payment of Borrower's own legal fees.  In the event of any dispute between the parties concerning this Agreement or the transactions contemplated hereby, the prevailing party shall be entitled to recover its costs and expenses, including reasonable attorneys' fees, incurred in connection with such dispute. If any provision of this Agreement is found to be invalid or unenforceable, the validity or enforceability of any other provision of this Agreement shall not be affected thereby.

**24.    Integrated Agreement and Subsequent Amendment.**    This Agreement and the other agreements, documents, obligations, and transactions contemplated by this Agreement constitute the entire agreement between Lender and Borrower, and may not be altered or amended except by written agreement signed by Lender and Borrower.   PURSUANT TO UTAH CODE SECTION 25-5-4, BORROWER IS NOTIFIED THAT THESE AGREEMENTS ARE A FINAL EXPRESSION OF THE AGREEMENT BETWEEN LENDER AND BORROWER AND THESE AGREEMENTS MAY NOT BE CONTRADICTED BY EVIDENCE OR ANY ALLEGED ORAL AGREEMENT.  All prior and contemporaneous agreements and understandings between the parties hereto as to the subject matter hereof are, except as otherwise expressly provided herein, rescinded.

25.    **Invalidity/Severability.**  In the event that any term or provision of this Agreement shall be determined by appropriate judicial authority to be illegal, unenforceable or invalid in whole or in part, then such provision shall be given its nearest legal meaning or be construed as deleted as such authority determines and the remainder of this Agreement shall remain in full force and effect.

This contract shall be deemed accepted when signed by Lender.

[THIS SPACE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be signed by the parties or their duly authorized officers or agents, as applicable, as of the acceptance date set forth below.

Lender:

WEBBANK CORPORATION

Acceptance Date: _7-29-99_

By: _[signature]_

Title: _____

You, the Borrower, may cancel this transaction at any time within three business days from the later to occur of (I) the date of this transaction; (ii) the date you receive your Truth in Lending disclosures; and (iii) the day you receive your Notice of Right to Cancel. See the attached two copies of the notice of cancellation form (Exhibit L-1 and L-2) for an explanation of this right.

Borrower:

_[signature]_
Terry Hepler

_[signature]_
Kimberly M Hepler

Witness _____

STATE OF _Michigan_ }
COUNTY OF _Montcalm ?_ }    SS: _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_

On _MAY 31, 1999_ , ____ before me, personally appeared the above signed individuals known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_[signature] Judy M. Sharp_
Notary

Expiration _10-29-2003_

10

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be signed by the parties or their duly authorized officers or agents, as applicable, as of the acceptance date set forth below.

**Lender:**

WEBBANK CORPORATION

Acceptance Date:_____

By: _____

Title: _____

You, the Borrower, may cancel this transaction at any time within three business days from the later to occur of (I) the date of this transaction; (ii) the date you receive your Truth in Lending disclosures; and (iii) the day you receive your Notice of Right to Cancel. See the attached two copies of the notice of cancellation form (Exhibit L-1 and L-2) for an explanation of this right.

**Borrower:**

*Terry W Hepler*
Terry Hepler

*Kimberly M. Hepler*
Kimberly M Hepler

_____
Witness

STATE OF *Michigan* }

COUNTY OF *Montomerup* }   SS: *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*

On _____*MAY 31, 1999*_____, _____ before me, personally appeared the above signed individuals known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_____*Judy M. Sharp*_____
Notary
*Expiration 10-29-2003*

## CONSENT OF SPOUSE AND OF FORMER SPOUSE
### (if applicable)

The undersigned, former spouse of the Borrower named herein, hereby consents to and approves and joins in the foregoing Agreement and the Related Documents to the extent required by law and acknowledges having fully read this Agreement and the Related Documents and fully understanding their terms.

_Kimberly M. Hepler_
Signature of Current Spouse

_Kimberly M. Hepler_
Print Name

_____
Signature of Former Spouse

_____
Print Name

STATE OF _Michigan_ }
                          } SS: _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_
COUNTY OF _Montgomery_ }

On _____ _May 31_ _____ _1999_ before me, personally appeared the above signed individuals known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_Judy M. Sharp_
Notary
_Expiration_
_10-29-2003_

## TERMS RIDER

1. Parties:

"Borrower":
          and
Address:

Terry Hepler
Kimberly M Hepler
22437 Lilac Street
Farmington, MI  48336


"Lender":
Address:

WebBank Corporation
136 Heber Avenue
Suite 209
Park City, Utah  84060-1831

"Lender's Assignee"
Address:

Settlement Funding, L.L.C.
5085 Avalon Ridge Parkway
Suite 600
Norcross, Georgia  30071

2. "Loan Amount":        $16,062.30

3. "Loan Payments":     85 monthly payments of $315.00 commencing on 7/1/99 through & including 7/1/06.

4. "Periodic Payments":     120 monthly payments of $315.00 commencing on 8/1/97 through & including 7/1/07.

5. "Interest Rate":   The Loan Payments represent repayment of the Loan Amount together with interest at a per annum rate of _____% per annum, compounded monthly, with an assumed Closing date of 5/27/99 will not occur unless and until the Conditions Precedent are satisfied. If the actual Closing date occurs prior to the assumed Closing date, the actual per annum interest rate will be less than the above-referenced rate; if the actual Closing date occurs after the assumed Closing date, the actual per annum interest rate will be more than the above-referenced rate. Borrower will be provided with written notification of the actual per annum interest rate on or before the Closing date.

6. Other Definitions:

"Borrower's Agent"

*Judy M. Sharp*

_____

_____

"Broker Fee":     A fee payable to Settlement Funding, L.L.C. equal to $2,500.00, which will be deducted from the Loan Amount.

"Business Day":     Any day other than a federal holiday, Saturday or Sunday.

"Cash Collateral:     120 monthly payments of $315.00 commencing on 8/1/97 through & including 7/1/07.

|  | will be deducted from the Loan Amount. |
|---|---|
| "Business Day": | Any day other than a federal holiday, Saturday or Sunday. |
| "Cash Collateral: | 120 monthly payments of $315.00 commencing on 8/1/97 through & including 7/1/07. |
| "Closing": | See Recitals. |
| "Collateral": | The Collateral shall consist of all right, title and interest of Borrower (and, upon Borrower's death, of Borrower's estate and any beneficiary designated by Borrower) in, to and under any and all contract rights, or personal property, whether tangible or intangible, now existing or hereinafter acquired, including, without limitation, any rights to cash payments due to Borrower and all right, title and interest of Borrower, Borrower's estate or any beneficiary thereunder to receive any monies under or pursuant to or on account of or related to any and all contract rights or other personal property, whether tangible or intangible, any monies actually received by Borrower, and any interest on the proceeds of all of the above composing or comprising all or any portion of any and all contract rights or other personal property, whether tangible or intangible, and all of Borrower's present or future right, title and interest to sell, assign, transfer, cause an early termination of, settle, receive consideration for, or undertake any similar activity with respect to any of the above. |
| "Conditions Precedent": | The conditions to closing set forth in Section 6 of the Agreement. |
| "Indemnified Parties": | See Section 7(a). |
| "Loan": | See Recitals. |
| "Notice of Direction Of Payment": | See Section 3(a). |
| "Obligations": | See Section 21. |
| "Questionnaire": | See Section 3(h). |
| "Related Documents": | All documents, instruments, questionnaires and agreements contemplated to be executed and delivered by the Borrower to Lender or to other parties pursuant to or in connection with the Agreement. |
| "Security Agreement": | See Section 3(e). |
| "Security Interest": | A security interest as defined by Article 9 of the Uniform Commercial Code. |
| "Secured Promissory Note": | See Section 3(d). |

"Servicer":                    Settlement Funding, L.L.C.
                               PO Box 945702
                               Atlanta, Georgia 30394-5702

"Servicing Account":           Terry Hepler
        and                    Kimberly M Hepler
                               c/o Settlement Funding, L.L.C.
                               PO Box 945702
                               Atlanta, Georgia 30394-5702

"Spousal Consent":             The consent executed by any spouse of the Borrower pursuant to the
                               Agreement.

7. Exceptions to Representations and Warranties:

3

8. Schedule of Exhibits:

| Exhibit | Document |
|---------|----------|
| "A" | Notice of Direction of Payments |
| "B" | Secured Promissory Note |
| "C" | Security Agreement |
| "D" | UCC-1 Financing Statement |
| "E" | Power of Attorney |
| "F" | Loan Re-Sale Disclosure |
| "G" | Statement of Legal Representation |
| "H" | Questionnaire |
| "I" | IRS Form W-9 |
| "J" | Authorizations |
| "K" | Interest Rate Disclosure |
| "L" | Notice of Right to Cancel |
| "M" | Employability Affidavit |
| "N" | ACH Direct Debit Authorization |
| "O" | Insurance Representation |
| "P" | Amount Financed Itemization |