**Exhibit "C"**
**SECURITY AGREEMENT**

Terry Hepler and Kimberly M Hepler (the "Borrower") and WebBank Corporation (the "Lender") agree as follows::

1. GRANT OF SECURITY INTEREST. In consideration of the covenants and agreements contained herein, and financial accommodations given, to be given, or continued, Borrower hereby grants to Lender a continuing security interest in all of the Collateral described in Paragraph 2 hereof. The security interest created by this Agreement attaches to the Collateral immediately upon execution hereof without further act by Borrower or Lender and secures payment of all debts, obligations, and liabilities now or hereafter existing, absolute or contingent, and further advances owing to Lender by Debtor, including, without limitation, pursuant to the Loan Agreement dated the date hereof (the "Loan Agreement") by Borrower in favor of Lender and pursuant to this Security Agreement (collectively the "Indebtedness"). Terms not otherwise defined herein shall have the meanings assigned to such terms in the Loan Agreement.

2. COLLATERAL DESCRIPTION. The Collateral shall consist of all right, title and interest of Borrower (and, upon Borrower's death, of Borrower's estate and any beneficiary designated by Borrower) in, to and under any and all contract rights, or personal property, whether tangible or intangible, now existing or hereinafter acquired including, without limitation, any rights to cash payments due to Borrower and all right, title and interest of Borrower, Borrower's estate or any beneficiary thereunder to receive any monies under or pursuant to or on account of or related to any and all contract rights or other personal property, whether tangible or intangible, any monies actually received by Borrower, and any interest on the proceeds of all of the above composing or comprising all or any portion of any and all contract rights or other personal property, whether tangible or intangible, and all of Borrower's present or future right, title and interest to sell, assign, transfer, cause an early termination of, settle, receive consideration for, or undertake any similar activity with respect to any of the above (the "Collateral").

3. WARRANTIES AND REPRESENTATIONS. In addition to those representations set forth in the Agreement, Borrower also warrants and represents that:

   3.1 <u>Borrower's Title</u>. Except as specified herein, Borrower has title to all the Collateral and no other person, entity, agency, or government has or purports to have, or upon acquisition shall have, any right, title, lien, encumbrance, adverse claim, or interest in any of the Collateral.

   3.2 <u>Borrower's Authority</u>. Borrower has authority to enter into this Security Agreement and any person signing on Borrower's behalf has been duly authorized to execute this Security Agreement for Borrower.

   3.3 <u>Information</u>. Any and all information now or hereafter supplied to Lender by Borrower, or at Borrower's request or instruction, is correct.

4. COVENANTS AND AGREEMENTS. Borrower covenants and agrees that:

   4.1 <u>Additional Information</u>. Borrower shall, upon Lender's demand, establish the correctness of any information supplied to Lender and shall promptly notify Lender of any adverse changes in any information supplied to Lender and of any change in Borrower's principal place of residence, business or mailing address, and of any change of address to which notices should be sent.

   4.2 <u>Additional Documents</u>. Borrower shall execute any additional agreements, assignment, or documents, including, but not limited to, UCC-1 Financing Statements, that may be deemed necessary or advisable by Lender to perfect Lender's security interest in the Collateral and to effectuate the purposes of this Security Agreement.

   4.3 <u>Sale, Lease or Disposition</u>. Except in the ordinary course of its business, Borrower shall not, without the written consent of the Lender, sell, contract to sell, assign or encumber the Collateral until the Indebtedness to Lender has been completely discharged.

   4.4 <u>Taxes-Assessments-Charges-Liens-Encumbrances</u>. Any and all taxes shall be the responsibility of the party on whom the tax is imposed. Borrower shall pay any other charges, liens or encumbrances, taxes, filing fees or duties now or hereafter affecting the Collateral.

4.5   Defense of Title. Borrower, at Borrower's own cost or expense, shall appear in and defend any action or proceeding which may affect the Lender's security interest in, or Borrower's title to, any Collateral.

4.6   Appointment of Lender as Attorney in Fact; Reimbursement. Borrower shall and hereby does appoint Lender as Borrower's Attorney in Fact to do any act which Borrower is obligated by this Security Agreement to do, to exercise such rights as Borrower might exercise, to use the Collateral as Borrower might use, and to collect such proceeds as Borrower might collect, all to protect and preserve Lender's rights hereunder and in the Collateral.

4.7   No Event of Default. Borrower is not a party to any agreement which prohibits any term or condition of this Security Agreement, and the execution and delivery of this Security Agreement will not violate any law or agreement governing Borrower or to which Borrower is a party.

4.8   No Modification. Borrower shall not, without the written consent of Lender, accept any payments regarding the Cash Collateral, or make any change in any of the terms of this Security Agreement, the Secured Promissory Note, or the Loan Agreement.

5.   REMEDIES.

5.1 Borrower understands and agrees that in the event that any of the following occur:

(i)   Any warranty or representation made by Borrower is false;

(ii)  Any covenant or agreement of Borrower is violated; or,

(iii) Lender in good faith deems itself insecure (because the prospect of payment is impaired, the prospect of performance of any covenant or agreement is impaired, or the value or priority of the security interest is impaired); the Lender, in addition to any remedies provided by law, in this Security Agreement or in the Loan Agreement, and to the extent provided by law, may:

(a)   Incur expenses (including reasonable attorneys' fees, legal expenses and costs) to exercise any right or power under this Security Agreement;

(b)   Declare, without notice to the Borrower, that an Event of Default has occurred;

(c)   Notify other interested persons or entities of the Event of Default and of the acceleration and other actions taken by Lender.

6.   TERMINATION.

Upon Borrower's complete and absolute satisfaction and payment of the Indebtedness and all other amounts due Lender hereunder, Lender shall, at Borrower's request and expense, take such action as may be necessary to terminate Lender's interest in the Collateral including, but not limited to, executing UCC-3 terminations.

7.   RULES TO CONSTRUE AGREEMENT.

Time is of the essence of this Security Agreement. Lender's acceptance of partial or delinquent payments or failure of Lender to exercise any right or remedy shall not be a waiver of any obligation of Borrower or right of Lender and shall not constitute a modification of this Security Agreement and shall not constitute a waiver of any other similar default subsequently occurring. This Security Agreement contains the entire security agreement between Lender and Borrower. The provisions of this Security Agreement are hereby made applicable to and shall inure to the benefit of Lender's successors and assigns and bind Borrower's heirs, legatees, devisees, administrators, executors, successors, and assigns. Any notice under this Security Agreement shall be in writing, and any written notice or other document shall be deemed to have been duly given on the date of personal service on the parties or on the third business day after mailing, if the document is deposited in the United States mail, postage prepaid, registered or certified mail, return receipt requested, and addressed to the parties at the addresses set forth below or at the most recent address specified by the addressee through written notice under this provision. Failure to conform to the requirement that mailings be done as provided above shall not defeat the

effectiveness of notice actually received by the addressee. If any provision of this Security Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of the Security Agreement shall continue in full force and effect and shall in no way be impaired or invalidated. The rights and obligations or the parties and the interpretation and performance of this Security Agreement shall be governed by the laws of the State of Utah.

DATED: 7-29-99

**LENDER:**
**WEBBANK CORPORATION**

By: _B. Hell, AVP_

**BORROWER:**

_Terry Hepler_
Terry Hepler
and Kimberly M Hepler

_Kimberly M Hepler_

STATE OF Michigan
COUNTY OF Montmorency

ss 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

On MAY 31 1999, _____ before me, personally appeared the above signed individuals known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Notary _Judy M. Sharp_
Expiration 10-29-2003

3

effectiveness of notice actually received by the addressee. If any provision of this Security Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of the Security Agreement shall continue in full force and effect and shall in no way be impaired or invalidated. The rights and obligations or the parties and the interpretation and performance of this Security Agreement shall be governed by the laws of the State of Utah.

DATED: _____

        **LENDER:**
        **WEBBANK CORPORATION**

By: _____

                                                  **BORROWER:**

                                                  */s/ Terry Hepler*
                                                  Terry Hepler
                                                  and Kimberly M Hepler

                                                  */s/ Kimberly M Hepler*

STATE OF *Michigan*
COUNTY OF *Montmorency*

ss 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

On *May 31 1999*, _____ before me, personally appeared the above signed individuals known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

                                                  */s/ Judy M. Sharp*
                                Notary
                                Expiration 10-29-2003